LAWRENCE BEMBOOM, ADMINISTRATOR *d. b. n.* OF ESTATE
OF BERNARD WIELING, AND OTHERS v. NATIONAL
SURETY CORPORATION.[1]

No. 34,448.

December 12, 1947.

*Oliver H. Aygarn,* for appellants.
*C. E. Warner,* for respondent.

LORING, CHIEF JUSTICE.

This is an appeal from an order denying plaintiffs' motion for a
new trial.

[1]Reported in 31 N. W. (2d) 1.

Bernard Wieling died testate in 1935 in Iowa, where he resided. He left a farm in Minnesota. In 1937, Bernard Kennedy was appointed administrator with the will annexed by the probate court for Morrison county, Minnesota, wherein the land lay. He administered the estate until his death in December 1945. Plaintiffs allege that they are the widow and devisees of Wieling.

It is plaintiffs' claim that between March and July 1941, Kennedy, as administrator, wrongfully and unlawfully razed, wrecked, and devastated certain buildings on the above-described real property. This action, brought in the district court after leave to sue had been granted by the probate court, was grounded on alleged active waste against defendant as surety on Kennedy's bond. The claim arises out of the fact that buildings on the Minnesota farm were in such a run-down condition that Kennedy, by letter, asked the probate court for license to sell them as wreckage. The judge replied that no license was required to sell "personal property." Kennedy then disposed of the buildings as lumber for $25, for which he accounted in his final account.

After hearing the evidence, the trial court directed a verdict for defendant on the ground that the matter was one resting solely and exclusively in the jurisdiction of the probate court and over which the district court had no jurisdiction.

■ The answer interposed a general denial. It also admitted the incorporation of defendant and the appointment in this state of Kennedy as personal representative of the Wieling estate, his administration thereof until his death on December 16, 1945, and the sale of the dilapidated buildings for $25, which he duly accounted for and credited in his final account.

Nowhere, however, in the answer does defendant admit the title of plaintiffs to the property upon which the waste was alleged to have been committed. Neither did plaintiffs offer any evidence of title beyond the conveyance to Bernard Wieling, nor any evidence that they are the widow and devisees. At the beginning of the trial, the trial court, seeing the issue of title made by the pleadings, discussed with counsel the matter of admitting ownership in plaintiffs.

Counsel for defendant, however, admitted only the conveyance to Wieling and specifically refused to admit ownership in the plaintiffs, saying "I haven't seen the will. I don't know if it was willed to them or to whom." Therefore, plaintiffs were adequately warned of defendant's position at the beginning of the trial. Again, at the close of plaintiffs' case, when defendant asked for and was granted the privilege of resting provisionally, he stated "that there is no showing here that the parties plaintiff are the only parties in interest in this action, * * * and that no cause of action is shown against the defendant." At the close of all the testimony, defendant again moved for a directed verdict "on the same grounds and for the same reasons as stated in my motion at the close of plaintiffs' testimony * * *." The court granted the motion.

■ If defendant was entitled to a directed verdict for any reason, the trial court must be sustained although he may have announced a different reason. Pangolas v. Calvet, 210 Minn. 249, 297 N. W. 741; Blomberg v. Trupukka, 210 Minn. 523, 299 N. W. 11; Iowa Guarantee Mtg. Corp. v. Kingery, 181 Minn. 477, 233 N. W. 18; Kipp v. Clinger, 97 Minn. 135, 106 N. W. 108.

We have searched the record in vain for any evidence or offer of evidence that plaintiffs are the owners of the land on which the wrecked buildings stood or that they are the widow and devisees. Hence they have failed to prove a cause of action. Therefore, the other questions which might well have been presented are not reached.

Order affirmed.

UPON APPLICATION FOR REARGUMENT.

On February 20, 1948, the following opinion was filed:

PER CURIAM.

Plaintiffs contend that, although the alleged heir at law and devisees did not prove a case, the administrator *de bonis non* is entitled on this record·to recover against the surety on the deceased administrator's bond on the alleged devastavit. The answer to the question now for the first time presented rests in a determination of

the problem as to in whom and against whom a cause of action arises when such a devastavit is committed.

At common law, to an administrator *de bonis non* was committed only the administration of such goods, chattels, and credits of the deceased as had not been administered. M. S. A. 525.291 and all previous enactments merely restated the common-law rule and authorized the appointment of an administrator *de bonis non* "to administer the estate not already administered." Under the strict common-law rule, he was entitled to possession of only such personal estate as remained in specie. Beall v. New Mexico, 83 U. S. (Wall.) 535, 540, 21 L. ed. 292, 294, where the court said:

"The next point made is a more serious one, to wit, that an administrator *de bonis non* cannot maintain suit on the original administrator's bond. * * * the whole frame of the petition is conceived on the theory that the duty of Beall [the displaced administrator] to respond for defaults and devastavits in administration is owed to the administrator *de bonis non*. This does not seem to be the law as understood in England or in the States which derive their principles of jurisprudence from England, although in some States statutes have been passed making it the duty of an administrator who has been displaced, or of the representatives of one who has deceased, to account to the administrator *de bonis non* [citing cases]. By the English law, as administered in the ecclesiastical courts, the administrator who is displaced, or the representatives of a deceased administrator or executor intestate, are required to account directly to the persons beneficially interested in the estate, distributees, next of kin, or creditors; * * *. To the administrator *de bonis non* is committed only the administration of the goods, chattels, and credits of the deceased which have not been administered. * * * And all assets of the testator or intestate in the hands of third persons at the death of an administrator or executor intestate belong to the administrator *de bonis non*. 1 Williams on Executors, 781, 4th American edition. Of course debts and choses in action not reduced to possession belong to this category. In this

case the claim of Hinckley's estate against his surviving partners is of this character. If anything can be realized therefrom by the prosecution of those partners, it is the duty of the administrator *de bonis non* to prosecute them, as much as it was his predecessor's duty to do so, before his discharge. But, for the delinquency of the former administrator in not prosecuting, he is responsible to the creditors, legatees, and distributees directly, and not to the administrator *de bonis non*. This is the result of the authorities referred to. And it follows that, as the administrator *de bonis non* has no claim against the former administrator on this ground, he cannot prosecute for it on the administration bond. * * * If specific effects of the estate remain in the hands of a discharged administrator or executor, or in the hands of his representatives, of course, the administrator *de bonis non* is entitled to receive them. And, if they are refused, he will be the proper person to institute suit on the bond to recover the amount. But this is perfectly consistent with the doctrine above expressed, that for delinquencies and devastavits he cannot sue his predecessor or his predecessor's representatives, either directly or on their administration bond." See, also, United States v. Walker, 109 U. S. 258, 3 S. Ct. 277, 27 L. ed. 927.

In this case, we have modified by judicial decision the strict rule that the administrator *de bonis non* was entitled only to that part of the estate which remains in specie. Balch v. Hooper, 32 Minn. 158, 20 N. W. 124. That case involved personalty which was not still in specie, but was the proceeds of assets which the administrator had converted into money. In settling the administrator's account when he sought discharge on account of ill health, he was found by the probate court to have over $10,000 which he had realized from disposing of assets of the estate. Such property was a tangible asset of the estate as distinguished from any liability for a devastavit.

In this state, title to real estate passes to the heir at law and the devisees upon the death of the owner, subject only to the right to possession of the administrator when appointed by the probate court for purposes of administration. The administrator's right is

sole, not joint with the heirs. Miller v. Hoberg, 22 Minn. 249. In the case at bar, at the time of the alleged devastavit the time for filing claims had long since expired. There is nothing in the record indicating that there were any creditors. The land had not been occupied by any tenant for some years. There was no evidence of any diminished rental value or of any loss by reason of the alleged devastavit, except what the alleged heir and devisees may have suffered by reason of the alleged diminution in value of the land itself.

We have searched our reports in vain for cases where the common-law rule has been changed any further than to abolish the "in specie" qualification. Since counsel have cited none, we must assume that they have found none. While broad expressions are found in some cases, when the facts are analyzed they go no further than to justify recovery of assets not before administered. In all the cases brought by the administrator *de bonis non,* where recovery was permitted against the displaced administrator, as in Balch v. Hooper, 32 Minn. 158, 20 N. W. 124, *supra,* property was in the hands of the displaced administrator which he should have turned over to the administrator *de bonis non.*

Nor does this case fall within the purview of M. S. A. 525.35, which imposes a liability for failure to collect debts due the decedent, or to sell property, or to pay over money in the administrator's hands by reason of which "the value of the estate is lessened, * * * or the persons interested suffer loss." By the statute, such neglect shall be considered waste and the administrator's accounts be surcharged therewith. But the waste so defined is limited to the results of the three types of failure enumerated.

Neither this statute nor any other that has been called to our attention creates a cause of action on a devastavit such as this against the displaced administrator in favor of the administrator *de bonis non.* On presentation of Kennedy's account, which included the proceeds of the sale of the lumber, Bemboom objected to its allowance, but the court allowed the account and did not surcharge it in respect to the lumber or buildings. The cause of action, if any,

in favor of the administrator *de bonis non* was not against the bondsman of the deceased administrator.

Petition denied.