# STATE EX REL. W. L. SHOLES v. UNIVERSITY OF MINNESOTA AND OTHERS.[1]

May 2, 1952.

No. 35,718.

---

[1]Reported in 54 N. W. (2d) 122.

W. L. Sholes, pro se.

J. A. A. Burnquist, Attorney General, George B. Sjoselius, Deputy Attorney General, Charles E. Houston, Assistant Attorney General, and David W. Louisell and William B. Lockhart, Law School, University of Minnesota, of Counsel, for respondents.

KNUTSON, JUSTICE.

For the purpose of deciding questions raised by this appeal, the facts may be briefly summarized.

Petitioner, appellant here, alleges that the board of regents of the University of Minnesota is permitting and actively aiding the spread of sectarian religious instruction on the campus of the university and is permitting certain other practices relating to religious activities on the campus, in violation of the charter of the university and contrary to Minn. Const. art. 1, § 16; U. S. Const. Amends. I and XIV; and 18 USCA, § 241. He further alleges that he is a citizen of the United States; a resident of Hennepin county, Minnesota; a freeholder, taxpayer, and voter in said county and state; and has a daughter presently a student in the university. On such petition, the district court of Hennepin county issued its alternative writ of mandamus commanding the board of regents to adopt and enforce rules and regulations prohibiting all use of University of Minnesota property and facilities for the teaching or dissemination of any and all sectarian religious doctrine and prohibiting the use of University of Minnesota property and facilities in aiding one religion, all religions, or preferring one religion over another, or aiding or permitting any religious activities on the university campus, save and except such as are purely secular in

nature and are essential to a better understanding of literature, science, and the arts, or to show cause why it has not done so.

The regents of the university, prior to answering, moved the court to quash the writ on the grounds:

(1) That the court has no jurisdiction over the regents of the University of Minnesota, a constitutional corporation, in the exercise of its legislative functions.

(2) That the court has no jurisdiction of the subject of the proceeding.

(3) That the petition for such writ fails to allege facts constituting a cause of action in behalf of petitioner and that the alternative writ was improvidently issued.

(4) That petitioner has not exhausted his administrative remedies.

(5) That the facts alleged in the petition and writ fail to show that petitioner is entitled to the remedy of mandamus.

(6) That mandamus is not the appropriate remedy.

The motion was granted. From the court's memorandum, we gather that the order quashing the writ was based on three grounds: (1) That the case was not ripe for judicial cognizance because petitioner had not exhausted his administrative remedies before the board of regents; (2) that the petition and alternative writ illegally seek to coerce the board of regents into the exercise of its legislative functions; and (3) that in any event mandamus is not an appropriate remedy. This appeal followed from such order and the judgment entered pursuant thereto.

Much of petitioner's brief is devoted to an argument on the merits. At the outset, it should be clearly understood that the merits of the controversy are not before us now. We do not determine whether the allegations of the petition are true, nor did the trial court do so. Nor do we decide whether, if true, such acts are prohibited by the university charter, our state or federal constitutions, or the federal statutes. The sole and only question now before us is whether the trial court correctly determined that peti-

tioner, at this stage of the proceeding, may not proceed by mandamus to compel the board of regents to adopt rules and regulations prohibiting the acts complained of. The regents in their brief rely principally upon two grounds: (1) That mandamus will not lie because petitioner has failed to exhaust his administrative remedies; and (2) that mandamus is not an appropriate action in any event.

The status of the board of regents of our state university has been firmly established by our prior decisions. In State ex rel. University of Minnesota v. Chase, 175 Minn. 259, 265, 220 N. W. 951, 953, we said:

"* * * the regents were made a 'body corporate' with power to *govern*. That is the power to control. * * * As applied to corporations, it is the power of management. * * *

"That a corporation was created by the act of 1851 and 'perpetuated' by the constitution with 'all the rights, immunities, franchises and endowments' which it then possessed is plain. Of that corporation the regents were both the sole members and the governing board. They were the corporation in which were perpetuated the things covered by the constitutional confirmation. The language has a definite legal import; the terms are those of confirmation in perpetuity of a prior grant of corporate rights. So the university, in respect to its corporate status and government, was put beyond the power of the legislature by paramount law, the right to amend or repeal which exists only in the people themselves. The result was a 'constitutional corporation,' * * *."

In Fanning v. University of Minnesota, 183 Minn. 222, 224, 225, 236 N. W. 217, 218, 219, we said:

"* * * The government [of the university] was vested in the regents. They were made a body corporate. It was made their duty to enact laws for the government of the university. * * *

* * * * *

"* * * The people by their constitution chose to perpetuate the government of the university which had been created by their terri-

torial legislature in a board of regents, and the powers they gave are not subject to legislative or executive control; nor can the courts at the suit of a taxpayer interfere with the board while governing the university in the exercise of its granted powers. This does not mean that the people created a corporation or institution which is above the law. The board must keep within the limits of its grant."

See, also, State ex rel. Peterson v. Quinlivan, 198 Minn. 65, 268 N. W. 858.

From these cases it is clear that the board of regents, as constituted by our territorial legislature and confirmed by our constitution, is a corporate entity endowed with the power to govern, and that so long as it stays within the powers conferred upon it by its charter, as confirmed by the constitution, the courts may not interfere. This does not mean, however, that it is not amenable to the courts if it transcends its constitutional powers or refuses to perform those functions required of it by its charter or bylaw.

■ The regents rely for the most part on the doctrine of exhaustion of administrative remedy. We think that doctrine is not applicable. The cases cited by the regents, and in fact the doctrine itself, all deal with the question whether resort may be had to the courts before a litigant or party seeking relief has sought relief or exhausted his right to seek relief from an administrative agency.

"* * * An administrative agency is an organ of government, other than a court and other than a legislature, which affects the rights of private parties through either adjudication or rule making." Davis, Administrative Law, § 1.

The board of regents of the university is much more than that. It is a body corporate, created by our constitution and endowed by it with the power to govern the institution which it controls, free from interference by either legislature or the courts so long as it stays within the scope of its constitutional powers. An administrative agency, on the other hand, is given life by the legisla-

ture. Its powers and duties are prescribed by the legislature. As it is created, so may it be destroyed. Its powers may be curtailed or enlarged by legislative action. The legislature has no such power over the board of regents of our university. Its charter may be amended only by action of the people.

Furthermore, the doctrine of exhaustion of administrative remedies usually presupposes that some action has been taken by the administrative agency. It is "designed primarily to control the timing of judicial relief from adjudicative action of an agency." Davis, Administrative Law, § 182. Even assuming that the board of regents could be considered to occupy a position analogous to an administrative agency in the application of this doctrine, there has here been no action taken by the board at all. It would seem that if any doctrine in the field of administrative law is applicable by analogy, it would be the doctrine of primary jurisdiction rather than that of exhaustion of administrative remedy. The distinction between the doctrines is clearly pointed out by Professor Davis as follows:

"The doctrine of primary jurisdiction, or preliminary resort, or prior resort, or exclusive administrative jurisdiction, is sometimes confused with, but is clearly distinguishable from the doctrines of exhaustion and ripeness. Those doctrines determine at what stage a party may secure review of administrative action. Primary jurisdiction is a principle which determines whether the court or the agency should make the initial decision." Davis, Administrative Law, § 197.

The doctrine of exhaustion of administrative remedies, as well as that of primary jurisdiction, is a development of federal administrative law. Berger, *Exhaustion of Administrative Remedies*, 48 Yale L. J. 981. The rights and powers of the board of regents, on the other hand, have no such origin, but emanate from the charter granted by the territorial laws of this state and confirmed by our constitution. Just as the legislature may give life to an administrative agency and likewise take it away, in like manner it may

control the question of when resort may be had to the courts, whether and at what point appeals may be had, and whether administrative agencies shall have primary or exclusive jurisdiction, so long as the constitutional requirements of due process are satisfied. The status and powers of the board of regents, on the other hand, are not subject to the control of the legislature, nor may they be invaded by the courts so long as the board stays within its lawful scope as defined by the constitution.

There is, however, a doctrine common to the law of corporations, somewhat akin to the doctrine of primary jurisdiction in the field of administrative law, which we believe is applicable by analogy and controlling here. In State ex rel. University of Minnesota v. Chase, 175 Minn. 259, 268, 220 N. W. 951, 955, we said:

"* * * the legislature cannot transfer any of their [the regents] constitutionally confirmed power from the regents to any other board, commission, or officer whatsoever. Their appointment by the territorial legislature as sole members and directors of the university corporation was confirmed by the constitution. That put them in a position somewhat analogous to that of the governing board of the ordinary corporation. In the absence of special rule contra, 'all authority in respect to the business of the corporation is lodged in the board of directors.' 2 Thompson, Corp. (3 ed.) § 1278. The people were the 'corporators of this institution of learning' and 'by their Constitution, conferred the entire control and management of its affairs and property' upon the Board of Regents."

The board of regents of the University of California was established as a corporation under Cal. Const. art. 9, § 9, much the same as ours. See, Elliott and Chambers, The Colleges and the Courts, 507. In Wall v. Board of Regents, 38 Cal. App. (2d) 698, 102 P. (2d) 533, petitioner sought an alternative writ of prohibition to prevent the board of regents of the University of California from continuing the employment and payment of the salary of one Bertrand Russell, who had been employed by the management of the

university. In denying the requested relief the California court said (38 Cal. App. [2d] 699, 102 P. [2d] 534):

"The board of regents constitute a corporation and from the petition it would appear that it is a normally functioning body. This being so, this court has no right to interfere with its government. The conclusions reached by the regents are final in the absence of fraud or oppression. 'It is an elementary principle of law that a court has no power or right to intermeddle with internal affairs of a corporation in the absence of fraudulent conduct on the part of those who have been lawfully entrusted with the management and conduct of its affairs. The principle has been so well settled and established in both federal and state jurisdictions that it seems unnecessary to give further citations. (Consolidated Cement Corp. v. Pratt, 47 Fed. (2d) 90.) The authority of the directors in the conduct of the business of a corporation must be regarded as absolute when they act within the law. The court cannot substitute its judgment for that of the directors.'"

With respect to the right of petitioner to seek redress in the courts without first petitioning the board of regents for relief, the court said (38 Cal. App. [2d] 699, 102 P. [2d] 534):

"Before a private citizen can sue a public corporation for redress of his grievances, because of the alleged fraud or oppression on the part of the directors of such corporation, demand must first be made upon the directors to repair the wrong done by the management, and where the pleading fails to state that such a demand has been made and that petitioner has exhausted his legal remedies, his action will not lie. * * * Nothing in the petition indicates that the grievances of the petitioner have ever been made known to any member of the board of regents or that a demand upon the board of regents would have been futile."

In support of the above statement, the California court cited and relied upon Hawes v. Oakland, 104 U. S. (14 Otto) 450, 26 L. ed. 827. In that case, a stockholder of the corporation, who lived in

the state of New York, commenced an action against the corporation and the city of Oakland seeking to restrain certain acts claimed to be detrimental to the interests of the stockholders. The city demurred on the ground, among other things, that plaintiff had no capacity to sue. The court said (104 U. S. 460, 26 L. ed. 832):

"* * * before the shareholder is permitted in his own name to institute and conduct a litigation which usually belongs to the corporation, he should show to the satisfaction of the court that he has exhausted all the means within his reach to obtain, within the corporation itself, the redress of his grievances, or action in conformity to his wishes. He must make an earnest, not a simulated effort, with the managing body of the corporation, to induce remedial action on their part, and this must be made apparent to the court. If time permits or has permitted, he must show, if he fails with the directors, that he has made an honest effort to obtain action by the stockholders as a body, in the matter of which he complains. And he must show a case, if this is not done, where it could not be done, or it was not reasonable to require it."

We have applied the above doctrine in cases involving private corporations. National P. & P. Co. v. Rossman, 122 Minn. 355, 142 N. W. 818; Burns v. Essling, 154 Minn. 304, 191 N. W. 899; Anderson v. Campbell, 176 Minn. 411, 223 N. W. 624; Shaw v. Staight, 107 Minn. 152, 119 N. W. 951, 20 L.R.A. (N.S.) 1077; see, Annotation, 55 A. L. R. 142. A similar rule applies to municipal corporations. Burns v. Essling, *supra*. The general rule is stated in 13 Am. Jur., Corporations, § 454, as follows:

"If injury results to a shareholder in a corporation by an abuse of corporate power, the wrong must be redressed within the corporation if possible. A stockholder cannot maintain suit against the corporation to redress a corporate wrong until he has done all in his power to obtain within such corporation redress for the wrong complained of. Ordinarily, he is required to allege in his pleading that he sought, but was unable to obtain, the correction

of the wrongs complained of by the directors or managing officers of the corporation, or he must show facts excusing the making of such demand."

It is petitioner's contention that a demand would have been useless and that under State ex rel. Currie v. Weld, 39 Minn. 426, 40 N. W. 561, and Regan v. Babcock, 188 Minn. 192, 247 N. W. 12, it was not necessary to seek relief from the board of regents before proceeding in court, for the reason that the board would have denied the relief in any event. The cases relied upon by petitioner are clearly distinguishable from those now before us.

In the Currie case, *supra,* the action was brought to compel respondents by mandamus to move the offices of the county from the village of Slayton to Currie, the county seat. Only one act was involved. We held that the law itself pointed out the whole duty to comply. It required no intensive study or investigation to determine the legality of the act involved. The petition now before us alleges numerous acts of questionable legality. It may be necessary to curtail some of such activities and to abolish others. When it has been shown that the board has been requested to act and has failed to take such corrective action as may be necessary to abolish illegal activities, it will be time enough for the courts to intervene.

In Regan v. Babcock, *supra,* the defendants answered and denied the allegations of the complaint. By their conduct it was obvious that they had no intention of complying with the request of plaintiff. That is not apparent here. We have no reason to suppose that the board of regents of our great university would deny relief if it were convinced that the acts complained of were contrary to the constitutional proscriptions against such acts. In the operation of a university as large as ours, it is conceivable that citizens many times may question the legality of acts of the managing board. If such citizens are permitted to seek redress of their grievances in court before giving the board of regents an opportunity to act, the result will be to clutter the courts with matters often involving nothing more than the ordinary conduct of the university. It is

only a matter of fairness and a requirement of orderly procedure that a citizen be required to seek relief from the board of regents before proceeding in court.

We need not labor the contention of the board of regents that mandamus is not the proper remedy to control the exercise of its discretionary power or legislative function. Petitioner's claims are based on the contention that the regents are permitting or aiding activities which violate the university charter or the state or federal constitutions. It goes without saying that the board of regents has no discretionary power to do or permit any activity which is in contravention of the powers conferred upon it by its charter, nor may it evade the constitutional proscription of forbidden activities under the guise of the exercise of its discretionary powers or of its legislative function. The board has neither discretion nor legislative power to do that which is forbidden by its charter or the state or federal constitutions.

While we need not determine whether mandamus will ever lie in a case of this kind, we are not prepared to say categorically that mandamus may never be used to compel the board of regents to take such action as may be required of it by its charter or other governing law. Whether mandamus or injunction is the proper remedy usually depends on whether the party demanding relief seeks to compel the board to do something it is required to do by law[2] or to prevent it from doing something which is prohibited by law. In Gleason v. University of Minnesota, 104 Minn. 359, 362, 116 N. W. 650, 652, we said:

"* * * We are of the opinion that the government of the university as to educational matters is exclusively vested in the Board of Regents, and that the courts of the state have no jurisdiction to control the discretion of the board; but if it refuses to perform any

---

[2]Cf. Sweatt v. Painter, 339 U. S. 629, 70 S. Ct. 848, 94 L. ed. 1114; Sipuel v. Board of Regents, 332 U. S. 631, 68 S. Ct. 299, 92 L. ed. 247; Missouri ex rel. Gaines v. Canada, 305 U. S. 337, 59 S. Ct. 232, 83 L. ed. 208.

of the duties enjoined upon it by law, or arbitrarily refuses any person entitled thereto the privileges of the university, mandamus will lie to compel the board to act."

On the other hand, injunction may be the proper remedy when the relief sought is to restrain the board from doing or permitting those things to be done which are prohibited by the charter or by governing law.

Petitioner relies on Illinois ex rel. McCollum v. Board of Education, 333 U. S. 203, 68 S. Ct. 461, 92 L. ed. 649. In that case, petitioner sought by mandamus to compel defendant board of education to adopt rules and regulations prohibiting certain religious instruction in the public schools in a certain district of the state of Illinois. The question whether mandamus was the proper remedy was not raised. Furthermore, the board of education of the state of Illinois was not a public corporation such as our board of regents. What the court would have decided had the question been raised, we do not know.[3]

Where the decision is right as a matter of law, this court will affirm. 1 Dunnell, Dig. & Supp. § 421; Iowa Guarantee Mtg. Corp. v. Kingery, 181 Minn. 477, 233 N. W. 18; Bemboom v. National Surety Corp. 225 Minn. 163, 31 N. W. (2d) 1; Spiess v. Brandt, 230 Minn. 246, 41 N. W. (2d) 561.

Affirmed.

---

[3]Professor Corwin, in 14 Law and Contemporary Problems, 3, 9 (published quarterly by Duke University School of Law), said: "Mrs. McCollum, it seems to me, ought to have asked for an *injunction*, not *mandamus*."

In other cases relief has been sought by way of a declaratory judgment. See, Doremus v. Board of Education, 342 U. S. 429, 72 S. Ct. 394, 96 L. ed. 475; Adler v. Board of Education, 342 U. S. 485, 72 S. Ct. 380, 96 L. ed. 517.