**C & C TELETRONICS, INC.,**
Respondent,
v.
**U.S. WEST INFORMATION SYSTEMS,**
**INC., f.k.a. FirsTel Information**
**System, Inc., Respondent,**

**Wendell Anderson, et al., Defendants,**

**Regents of the University of Minnesota,**
**Respondent (C7–87–343), Appellant**
**(C9–87–635),**
and
**Fran Collins, et al., applicants for**
**intervention, Appellants**
**(C7–87–343).**

Nos. C7–87–343, C9–87–635.

Court of Appeals of Minnesota.

Nov. 3, 1987.
Review Denied Jan. 20, 1988.

Frederick E. Finch, Michael A. Trittipo, Fredrikson & Byron, Minneapolis, for C & C Teletronics, Inc., respondent.

Robert A. Brunig, O'Connor and Hannan, Minneapolis, for U.S. West Information Systems, Inc., f.k.a. FirsTel Information System, Inc., respondent.

William P. Donohue, Stephen S. Dunham, Minneapolis, for Regents of the University

of Minnesota, respondent (C7–87–343), appellant (C9–87–635).

Joseph B. Nierenberg, Minneapolis, for Fran Collins, et al., applicants for intervention, appellants (C7–87–343).

Hubert H. Humphrey, III, Atty. Gen., Jon K. Murphy, Kathleen L. Winters, Spec. Assts. Atty. Gen., St. Paul, for amicus curiae Minnesota Dept. of Labor and Industry.

Heard, considered and decided by RANDALL, P.J., and CRIPPEN and MULALLY, JJ.[*]

## OPINION

RANDALL, Judge.

C & C Teletronics (C & C), a subcontractor, sued U.S.West, the general contractor on a project to install a new phone system at the University of Minnesota (U of M), and the U of M alleging breach of contract. U.S. West and the U of M cross-claimed against each other for breach of contract. C & C's employees, Fran Collins, et al (employees), moved unsuccessfully to intervene in the suit. U.S. West moved for summary judgment or partial summary judgment on its cross-claim against the U of M. C & C joined in the motion. The Minnesota Department of Labor and Industry (DOLI) moved for permission to file an amicus curiae brief with the district court.

On March 2, 1987, the trial court granted U.S. West and C & C summary judgment on the issue of application of the Prevailing Wage Act. It ordered the U of M to pay U.S. West $235,530.77, the amount of the contract payment DOLI instructed the U of M to withhold from U.S. West when DOLI discovered that C & C did not pay its employees the statutory prevailing wage rate.

The trial court denied the employees' motion to intervene, concluding their interests could be adequately protected in a separate suit. The court denied DOLI's motion to act as amicus curiae. In its order, the trial court made findings of fact, and stated its intent to enter a final judgment.

The employees appealed from the January 14, 1987, order denying their motion to intervene. The U of M appealed from the judgment entered March 2, 1987.

This court consolidated the two appeals by special term order, and requested memoranda addressing the issue of whether the March 2 judgment was a final judgment. Based on specific findings and conclusions in the trial court's order; on the trial court's stated intention to enter a final judgment on the entire action; as well as on the parties' agreement, we accepted jurisdiction.

On May 7, 1987, the parties agreed to proceed without a transcript, using a statement of proceedings, under Minn.R.Civ. App.P. 110.03. The trial court granted summary judgment for respondents.

We affirm.

## FACTS

The parties agree on the basic facts. On March 1, 1984, the University issued a request for proposals (RFP) for the sale and installation of a telecommunications system, to be installed in 320 buildings on the U of M campus. The U of M chose U.S. West Information Systems' (U.S. West) proposal on August 9, 1984.

Before the contract was executed, Jeffrey G. Lalla, on behalf of the U of M, requested DOLI to adopt new labor classifications establishing prevailing wage rates applicable to the contract for the telecommunications system installation. The new classifications were "telecommunications systems technicians" and "telecommunications systems installers."

On June 18, 1984, pursuant to the U of M's request, DOLI's Labor Standards Division published "Notice of Intent to Establish Labor Classifications and Notice of Prevailing Wage Rates" for telephone equipment installers on state funded construction projects in the State Register and invited comment.

On August 27, 1984, DOLI adopted new labor classifications and wage rates for "telecommunications systems technicians"

[*] Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

and "telecommunications systems installers." A copy of DOLI's notice was incorporated into the U of M/U.S. West contract as Schedule O. On September 3, 1984, DOLI published "Notice of Establishment of Prevailing Wage Rates" in the State Register. DOLI received no objections to the establishment of prevailing wage rates within the 30 day comment period required by Minn. Rules 5200, 1090 (1983) to any of the three published notices.

The contract between the U of M and U.S.West was signed October 14, 1984. Section 19 of the contract at issue in this matter states in pertinent part:

> For any Contract for construction, alteration or repair of University buildings or other major structures which exceeds $2,500 in total cost, the Vendor and its Subcontractor shall pay to their respective laborers and mechanics employed directly on the work site at least the wage rates as determined by the Minnesota Department of Labor and Industry and issued by the Department in their Wage Rate Determination Schedules. The Vendor shall comply with the requirements of the Minnesota Department of Labor and Industry's Wage Determinations with respect to any Contract which exceeds $2,500, in lieu of the Contract Amount Conditions stated in Minnesota Statute 177–43 (1974) as amended (Chapter 191 Laws of Minnesota for 1975), Subdivision 7.

> \* \* \* \* \* \*

> A copy of the Wage Rate Determinations provided by the Minnesota Department of Labor and Industry, applicable to the County in which the Project is located, is included in Schedule O, Wage Rates Determination Schedules. \* \* \* If the only applicable wage rate schedule is that of the Minnesota Department of Labor and Industry, and any rate is missing or appears incorrect, the Vendor shall obtain the proper rate from the Department of Labor and Industry. If necessary, the Vendor shall assist in obtaining decisions on incorrect or missing rates.

On April 1, 1985, U.S. West entered into a subcontract with C & C, in which C & C agreed to furnish equipment and lines for the U of M's telecommunications switching system. C & C subsequently installed approximately 3.5 million feet of copper wire in 320 U of M buildings. It placed equipment, mainly telephone sets, pulled 4–wire station wire between equipment locations within buildings, and placed wall jacks. The C & C employees did not do any work to make connections between buildings or from the intermediate distribution frame to the main switching equipment.

Wherever possible, C & C employees used existing cable conduit or trays, and did not create cable trays or pathways for wire. If a pathway for wire did not exist, C & C employees filled out an order requesting the U of M to create the pathway. Surface phone jacks were attached with double stick tape, and not with screws or nails. C & C employees occasionally drilled holes, to facilitate installation of the system. In total, they drilled no more than 400 holes of about one/half inch diameter.

On June 4 and 25, 1985, DOLI mailed notice informing C & C that C & C was violating the Prevailing Wage Act by failing to pay its employees the prevailing telecommunications system installer wages. DOLI informed the U of M of its action, and advised it to consider the contract incomplete and to withhold payment under the contract until C & C adjusted the employees' wages to the prevailing rate. On February 18, 1986, after a final audit of wage records, DOLI issued C & C an additional Notice of Labor Law Violation.

On April 2, 1986, the U of M informed U.S. West, by letter, that it was withholding $1,000,000 of the contract payment. The U of M actually withheld $1,018,000. After an audit, the U of M paid additional funds under the contract. The final amount withheld was $235,530.77. On February 18, 1986, DOLI issued an additional notice of violation to C & C.

C & C's counsel notified DOLI, by letter dated March 3, 1986, of its objection to DOLI's notice and recommendation. Because C & C did not object within 20 days

after the wage rates were certified by DOLI, its objection was untimely. Minn. Stat. § 177.43, subd. 4 (1986).

On April 30, 1986, to accommodate C & C, DOLI met informally with C & C representatives. At that informal meeting, the only issue discussed was applicability of the installer wage classification to C & C's employees. By a letter dated May 30, 1986, DOLI informed C & C that DOLI would not reconsider its decision. On June 19, 1986, C & C requested DOLI to initiate a contested case proceeding to review DOLI's determination. DOLI denied C & C's request on June 23, 1986. On August 14, 1986, C & C filed the district court action which resulted in judgment in their favor.

## ISSUES

1. Did the district court properly grant summary judgment in this matter?

2. Did the trial court err by refusing to allow appellant employees to intervene?

## ANALYSIS

### I.

*Prevailing Wage Act*

This is a summary judgment case, governed by the standards of Minn.R.Civ.P. 56.03, and *Betlach v. Wayzata Condominium,* 281 N.W.2d 328, 330 (Minn.1979). The parties claim no material fact issues.

■ Determining whether a particular contract comes within the Prevailing Wage Act is not an issue of material fact, it is a question of law. A reviewing court does not defer to a trial court when reviewing questions of law. *A.J. Chromy Construction Co. v. Commercial Mechanical Services, Inc.,* 260 N.W.2d 579, 582 (Minn. 1977).

The Prevailing Wage Act requires contractors on state projects to pay employees no less than the prevailing wage in the same or the most similar trade or occupation in the area. Minn.Stat. § 177.43, subd. 1(2) (1986). Prevailing wage rates are set by the commissioner of DOLI. Minn.Stat. § 177.43, subd. 4. It is a misdemeanor for

an officer or employee of the state to execute a contract without complying with the Act. Minn.Stat. § 177.43, subd. 5 (1986).

DOLI is empowered to enforce the provisions of the Act. Minn.Stat. § 177.43, subd. 6 (1986). Accordingly, DOLI has promulgated procedures to carry out its duties to set and enforce prevailing wage rates. Minn.Rules 5200.1000–.1090 (1985). The Act is modeled on the Davis–Bacon Act, 40 U.S.C. § 276a et seq. (1987). The purpose of the Davis–Bacon Act is to ensure that employees of contractors working on state and federal projects are protected from substandard earnings. *Walsh v. Schlecht* 429 U.S. 401, 411, 97 S.Ct. 679, 686, 50 L.Ed.2d 641 (1977).

■ The U of M and C & C employees both claim the trial court erred in its application of the Prevailing Wage Act by concluding the contract was not for a "project" as defined in Minn.Stat. § 177.42, subd. 2 (1986). The Act applies to any contract for a "project." Minn.Stat. § 177.43, subd. 1 (1986). Minn.Stat. § 177.42, subd. 2 defines "project" as

erection, construction, remodeling, or repairing of a public building or other public work financed in whole or in part by state funds.

The U of M urges this court to look to the language of the contract to determine if the work contracted for was a "project" within the meaning of the Act. It argues that the contract, in several places, refers to "construction," and uses the words "project" and "work," words which, it contends, encompass "construction" in their contract definitions. It points out that, in the contract, U.S. West agreed to be responsible for all "construction."

The U of M asked the trial court and this court, when analyzing this issue, to look at work done under the contract as a whole, and not simply to the specific work done by C & C employees. In the general contract, U.S. West accepted responsibility for trenching, mounting exterior cable outlets, running large wire or cable, and placement of cables in steam tunnels. The U of M argues that this work constitutes "con-

struction," "repair," or "remodeling" under the statutory definition of construction. The U of M claims the enormity of the work to be done under the contract, and its permanence, support a conclusion that the work involved "construction" under section 177.42, subd. 2. It argues this conclusion is supported by the facts: that the contract called for installation of a new telecommunications system in 320 U of M buildings, that trenches were dug, millions of feet of copper wire were run, phone jacks were attached and replaced, and that the contract price exceeded $20 million. Moreover, the U of M argues, experts in the field, including DOLI, believed the contract came within the scope of the Act, and that public policy and the remedial nature of the Act favor a broad interpretation of the Act to include this contract.

The trial court did not look at the contract as a whole, but, instead, examined the work performed by C & C employees and concluded the Act did not apply to the employees.

The trial court stated:

The provision quoted [from the contract] contains no admission. The only language describing the contract itself says that it is for the sale of personal property. Ordinarily, such sales would not constitute erection, construction, remodeling or repairing of anything. However, this sale includes a labor element. The Court therefore deems facts about the actual of that labor to be material.

* * * Suffice it to note that no genuine issue exists as to any of the actual material facts about the work done under the contract; and that no evidence exists of any other material and relevant work. The Court therefore need not and does not decide whether the pulling of telephone wires through conduit would be part of the "erection, construction, repairing or remodeling of a public building" if construction, repairing, or remodeling were otherwise going on. In this case, all 320 buildings in which wire was pulled through conduits already existed. The Regents have introduced no evidence that they were otherwise being remodeled or repaired.

(Footnote omitted).

U.S. West and C & C argue that the trial court properly found the work done under the contract was not construction, repair, or remodeling. C & C also argues that the contract does not come within the statute because the project is not a "public work" under Minn.Stat. § 177.42, subd. 2's definition of "project." C & C further argues that, based on Minn.Stat. § 177.43, subd. 4, prevailing wage rates must be ascertained before the state asks for bids. C & C also argues that the U of M's intent to apply prevailing wages is immaterial, "secret intent." This argument is not persuasive because C & C had notice of the U of M's intent through Schedule O wage rates, section 19, and through the RFP. We do not address these issues because we hold the trial court correctly concluded that the Prevailing Wage Act does not apply to the U of M/U.S. West contract.

U.S. West argues that the Prevailing Wage Act does not apply because the contract is not one for "erection, construction, remodeling or repair," under section 177.42, subd. 2. It argues that C & C's employees did no construction work, and that any work involving construction was referred to the U of M, which made separate arrangements for any permanent changes necessary to accommodate the installation. U.S. West argues that all it contracted for was to sell and install a telecommunications system.

In this case, although we need not defer to the trial court, we agree with its reasoning. We find persuasive the case of *Universal Communications Systems v. Smith*, 104 N.M. 754, 726 P.2d 1384 (1986). *Universal* is factually on point with this case. The Universal Communications System contracted with the University of New Mexico (U of NM) to sell and install telecommunications equipment for the U of NM in existing U of NM buildings. The system included all 9000 telephones or handsets installed through the university. The nature of the work performed by Universal's employees, as described by the

court, was nearly identical to the work done by C & C employees in the installation of the U of M's telecommunications system. The Universal/U of NM contract included nothing in the way of erection or alteration of any university building or structure. *Id.* The wires were run through existing conduit.

New Mexico law, somewhat similar to Minnesota law, required that New Mexico's Labor and Industrial Commissioner established wages for certain employees who would work on the project. New Mexico's Public Works Minimum Wage Act, N.M. Stat. Ann. §§ 13–4–11 through –17 (1978) applies to:

> [E]very contract in excess of twenty thousand dollars ($20,000.00), to which the state or any political subdivision thereof is a party, for construction, alteration, demolition or repair, or any combination of these, including painting and decorating of public buildings, * * * shall contain a provision stating the minimum wages to be paid various classes of laborers and mechanics which shall be based on the wages that will be determined by the chief of the labor and industrial bureau * * *.

N.M.Stat.Ann. § 13–4–11 (1978). The issue addressed by the New Mexico Supreme Court was whether the installation of the telecommunication system fell under the statutory definition contained in section 13–4–11. In determining that the contract did not fall within section 13–4–11, the New Mexico Supreme Court found relied on prior case law defining "construction" as, "when the structure of the building is so completely changed that it could properly be called a new building." *Id.* 104 N.M. at 756, 726 P.2d at 1386. The court defined "alteration" as having a meaning other than "constructing, repairing, installing or demolishing, otherwise all of the words would not have been used in the statute." *Id.* Concluding that none of the statutory wording applied to installation of a telecommunications system, the New Mexico Supreme Court held that installation of a telecommunications system did not come within the statute.

*DOLI's Argument*

■■■ As a general rule, parties must exhaust their administrative remedies before proceeding to district court. *See generally State ex rel. Sholes v. University of Minnesota,* 236 Minn. 452, 456–58, 54 N.W. 2d 122, 126 (1952). DOLI argues that C & C chose an improper route to challenge application of the Act to the contract by commencing a collateral action for breach of contract, and bypassing agency appeal procedures outlined in the APA. Minn. Stat. § 14.63 (1986), see Minn.Stat. § 177.43, subd. 4. This course of action, DOLI argues, harms DOLI's interest in instilling finality in its prevailing expertise, and jeopardizes harmonious relations between the executive and judicial branches of government.

We hold the case law cited by DOLI on deference to agency decisions is not applicable here. *See e.g. Reserve Mining v. Herbst,* 256 N.W.2d 808, 824 (Minn.1977). In the procedural posture of this case, we are not reviewing the administrative adjudication of a contested case. We are reviewing a trial court summary judgment where DOLI only appeared as amicus curiae. Thus, we need accord no special deference to the opinion of an agency that is not a party to the action.

## II.

*Intervention*

The employees argue the trial court erred by not allowing them to intervene. Their motion was based on the following claims: (1) they are intended third party beneficiaries to the subcontract between C & C and U.S. West; (2) they are within the class of persons to be protected by Minnesota's Prevailing Wage Act; (3) they were not paid appropriate wages under the Prevailing Wage Act. The trial court found the employees submitted no evidence that disposition of this matter would impede or impair their ability to protect their interests, and concluded the employees were not entitled to intervene as of right.

Because we uphold the trial court's decision that the Prevailing Wage Act does not

apply to the U of M's telecommunication contract, we find the issue of the employees' petition to intervene is moot.

### DECISION

The district court did not err by granting summary judgment. The issue of the employees' right to intervene is moot.

Affirmed.

CRIPPEN, J., concurs specially.

CRIPPEN, Judge, concurring specially.

Respondents, a contractor and subcontractor, seek an award of money damages for appellant's failure to make full payment on a contract dated October 14, 1984. Respondents contend that appellant has no right under the contract to insist on payment of higher wages to employees of respondent C & C Teletronics or to withhold money for that purpose. This is not a proceeding of C & C employees to determine wages mandated by Minn.Stat. § 177.43 (1986). *See* Minn.Stat. §§ 177.-41–.44. Likewise, this is not a proceeding by the State Department of Labor and Industry to enforce payment of prevailing wages according to the mandate of section 177.43. *See* Minn.Stat. § 177.43, subd. 6 (mandate for department enforcement of obligations under the section); section 177.-43, subd. 5 (criminal penalties for noncompliance with the statute). The litigation here turns on the contract of the parties.

The contract between the parties called for minimum wage payments for an agreement calling for "construction, alteration or repair of University buildings or other structures." On the evidence of record, the trial court could properly determine that employees of C & C Teletronics did not do work constituting construction or repair of buildings.

Projects covered by the prevailing wage requirement of section 177.43 include those involving construction or repair "of a public building or other public work financed in whole or part by state funds." Minn.Stat. § 177.42, subd. 2 (1986). On the evidence of record, the trial court could properly determine that C & C Teletronics employ-

ees were not involved in construction or repair of "a public building." Clearly and specifically, the trial court analyzed only the question whether these employees were involved in building construction or building repair.

In 1986, the New Mexico Supreme Court dealt with a proceeding by the New Mexico Labor and Industrial Commissioner to enforce the prevailing wage law of that state. *See Universal Communications Systems v. Smith,* 104 N.M. 754, 726 P.2d 1384 (1986). *Universal Communications* turned solely on the language of the New Mexico Public Works Minimum Wage Act, N.M.Stat.Ann. § 13–4–11 (1978). The New Mexico statute uses language resembling the words chosen by the parties here in their October 1984 contract. The statute governs contracts involving construction or related improvements "of public buildings." The holding of the New Mexico court is persuasive in support of the trial court's decision under the contract of the parties in this case.

Unlike the New Mexico statute, the Minnesota prevailing wage statutes cover construction and repair of public buildings or of any "public work" other than buildings. The Minnesota Department of Labor and Industry believe that the Minnesota statute governs the wage payment obligations of C & C Teletronics to its employees. The department's argument is premised on the statutory language covering all public work projects. The merits of the department's position have not been determined in these proceedings.

The trial court wrote an extensive memorandum on the topic of construction and repair of public buildings. The court did not address the public work provision of section 177.42, subd. 2. In fact, arguments on that provision of the statute were not presented to the court, because the court elected against hearing the propositions of the Department of Labor and Industry in a contractual dispute between private parties. The court entered judgment for recovery of money under the October 1984 contract. "[U]nder the contract at issue," the trial court concluded in its order for

judgment, the prevailing wage statute mandates did not apply. According to specific language in the contract, state wage rate determinations did not apply for contracted services other than those for construction or repair of "buildings or other major structures."

There is reason here to be concerned about language of the trial court and language of this court which may suggest a decision as to whether or not the prevailing wage statute applies to the employment services of those who worked for C & C Teletronics on the University job. Nothing decided in these proceedings deals with that general question, because these proceedings have never addressed the meaning and import of statutory protection for all public work projects. Because the breadth of coverage for public works projects has not been addressed by the trial court or this court, it is not given further attention here. Any such observations in these proceedings would be mere dicta. That question must be resolved in other proceedings, whether those brought by the C & C Teletronics employees or proceedings initiated by the Department of Labor and Industry.

I concur specially.