Roger L. WINBERG, Respondent,

George Martin, Jr., Respondent,

v.

UNIVERSITY OF MINNESOTA,
Petitioner, Appellant,

Commissioner of Veterans
Affairs, Respondent.

Nos. CX–91–2009, C3–91–2224
and CX–91–2009.

Supreme Court of Minnesota.

May 14, 1993.

Mark B. Rotenberg, University of Minnesota, Minneapolis, and Karen G. Schanfield and Penelope J. Phillips, St. Paul, for U of M.

Gayle Gaumer, Thomas Bennett Wilson, III, Edina, for George Martin, Jr.

Hubert H. Humphrey, Atty. Gen., Bernard E. Johnson, Sp. Asst. Atty. Gen., St. Paul, for Comm. of Veterans Affairs and Roger Winberg.

WAHL, Justice.

The issue in this consolidated appeal is whether the University of Minnesota is a "political subdivision" of the state to which the Veterans Preference Act, specifically Minn.Stat. §§ 197.455 and 197.46 (1990), ap-

plies. After over eighty years of non-application of the Act to the University of Minnesota, we are asked to examine and determine the validity of the University's claimed exemption from the Act. The court of appeals has affirmed an order of the Commissioner of Veterans Affairs and an order of the district court holding that the Act does apply to the University. We reverse.

In *Winberg v. University of Minnesota* (CX–91–2009), Roger Winberg, an honorably discharged veteran, applied but was not hired for fifteen different vacant positions advertised by the University of Minnesota from 1987 to 1991. He was not granted veterans preference points by the University or notified of the reasons for rejection of any of his applications. Winberg petitioned the Commissioner of Veterans Affairs for relief. After a hearing, the Administrative Law Judge (ALJ) determined that the University was either a political subdivision under Minn.Stat. § 197.455 (1990) or a state agency within the meaning of Minn.Stat. ch. 43A to which the Veterans Preference Act applies. Because there was no showing that Winberg would have been eligible for any of the positions even if preference points had been granted, the ALJ recommended only that the University be ordered to comply with the Act in the future.

The Commissioner adopted the ALJ's findings and ordered the University of Minnesota to revise its hiring practices to comply with the Act in all respects, including awarding veterans preference points and giving reasons for rejection. The University appealed the decision by writ of certiorari to the court of appeals.

In *Martin v. University of Minnesota* (C3–91–2224), George Martin, Jr., an honorably discharged veteran employed for thirty years by the University of Minnesota, requested a veterans preference hearing pursuant to Minn.Stat. § 197.46 (1990) when he was notified that he was going to be laid off because his position was being abolished in a departmental reorganization. The University denied the request for a hearing on the ground that section 197.46 does not apply to the University. Martin sought a writ of mandamus and injunctive relief in district court. The district court, after a hearing, concluded that the University is a political subdivision of the state to which the Veterans Preference Act applies and enjoined the University from terminating Martin's employment until he is provided a hearing pursuant to section 197.46. The University appealed the order of the district court and requested the consolidation of the Martin and Winberg appeals.

A divided panel of the court of appeals affirmed both orders. *See Winberg v. University of Minnesota*, 485 N.W.2d 325 (Minn.App.1992). The majority held that the University of Minnesota is included within the term "political subdivision" for purposes of the Veterans Preference Act.[1] *Id.* at 328. Having found the Act applicable, the court of appeals went on to hold that application would not infringe upon the constitutional power of the Board of Regents to govern the University because the Act would apply only to nonacademic, non-confidential, non-policymaking positions and not to professors, faculty, instructors, administrators, or teaching assistants. *Id.* at 330. The court of appeals also held the granting of the permanent injunction not to be an abuse of discretion. *Id.*

The dissenting judge, on the authority of our case law, concluded that "political subdivision" cannot be defined to include the University. *Id.* at 331 (Huspeni, J., dissenting). The dissent notes that our courts have found an entity to be a political subdivision under the Act only where the entity has the power to tax or to cause taxes to be levied. *Id.* (citing *Dahle v. Red Lake Watershed Dist.*, 354 N.W.2d 604, 606 (Minn. App.1984) and *Henry v. Metropolitan Waste Control Comm'n*, 401 N.W.2d 401, 406 (Minn.App.1987)).

1. The court of appeals specifically found that the Act does not apply to the University as a state agency through Minn.Stat. ch. 43A. The issue of state agency was not appealed to this court.

Since 1907, Minnesota veterans have been afforded a preference, by law, in public employment. *See* Act of April 19, 1907, ch. 263, §§ 1, 2, 1907 Minn.Laws 355. The "laudable purpose" of this legislation was "to give a well-earned preference in appointments in the public service to those who have honorably served the nation in its time of peril." *State ex rel. Kangas v. McDonald,* 188 Minn. 157, 161, 246 N.W. 900, 901 (1933). The Act was also designed "to protect honorably discharged veterans in public employment from the ravages and insecurity of a political spoils system." *Johnson v. Village of Cohasset,* 263 Minn. 425, 435, 116 N.W.2d 692, 699 (1962). Veterans preference laws have been held to be remedial statutes that are to be liberally construed to accomplish their legislative purpose. *See Abt v. Wilcox,* 264 Mich. 183, 249 N.W. 483, 483 (Mich.1933); *Krohn v. Judicial Magistrate Appointing Comm'n,* 239 N.W.2d 562, 564 (Iowa 1976).

The provision at issue in Winberg's case gives veterans a credit of five or ten points on their examination ratings when applying for public employment. It reads:

> The provisions of section 43A.11 granting preference to veterans in the state civil service shall also govern preference of a veteran under the civil service laws, charter provisions, ordinances, rules or regulations of a county, city, town, school district, or other municipality or *political subdivision of this state,* except that a notice of rejection stating the reasons for rejection of a qualified veteran shall be filed with the appropriate local personnel officer.

Minn.Stat. § 197.455 (1990) (emphasis added). Martin's case involves the provision of the Veterans Preference Act which requires public employers to hold a hearing before terminating a veteran's employment. That section, in relevant part, provides:

> No person holding a position by appointment or employment in the several counties, cities, towns, school districts and *all other political subdivisions in the state,* who is a veteran separated from the military service under honorable conditions, shall be removed from such position or employment except for incompetency or misconduct shown after a hearing, upon due notice, upon stated charges, in writing.

Minn.Stat. § 197.46 (1990) (emphasis added). Nowhere in the Veterans Preference Act has the legislature specifically named the University as an entity to which the Act applies. Sections 197.455 and 197.46 name only counties, cities, towns, school districts, municipalities, and political subdivisions. Is the University a political subdivision of the state for purposes of the Act? We hold that it is not.

■ The University of Minnesota is a unique constitutional corporation, established by territorial act in 1853 and perpetuated by the state constitution in 1857. The people of Minnesota thereby conferred the entire control and management of the University's affairs and property upon the board of regents, leaving no such power to be exercised by the legislature. *State ex rel. University of Minnesota v. Chase,* 175 Minn. 259, 220 N.W. 951 (1928). Though the powers of the regents are not subject to legislative or executive control, the University is not "above the law." *Fanning v. University of Minnesota,* 183 Minn. 222, 226, 236 N.W. 217, 219 (1931).

■ The legislature recognizes the University's unique constitutional status and, in the great majority of laws it passes affecting the University, it expressly includes or excludes the University or its board of regents as subject to or not subject to the law.[2] Thus, if the legislature

---

2. *See, e.g.,* Minn.Stat. § 14.03, subd. 1 (1992) (Administrative Procedures Act, in sections 14.-001–.69, does not apply to the University of Minnesota); Minn.Stat. § 16B.33, subd. 1(a) (1992) (meaning of "agency" includes the University of Minnesota); Minn.Stat. § 79.34, subd. 1(2) (1992) (for purposes of creating Reinsurance Association, "state" means the administra-

tive branch, legislative branch, judicial branch, and University of Minnesota); Minn.Stat. § 15.15 (1992) (not applicable to the regents of the University); Minn.Stat. § 43A.24, subd. 2 (1992) (board of regents determines whether certain University employees are eligible for life insurance and health care benefits); Minn.Stat. § 169.965, subd. 1 (1992) (regents may make,

had intended the Veterans Preference Act to apply to the University of Minnesota, it most likely would have included the University by specific reference. Using Minn. Stat. § 645.27, a rule of statutory construction which provides that "the state is not bound by the passage of a law unless named therein," the University, which is itself a constitutional arm of the state, would not be bound by the Veterans Preference Act unless explicitly named.

Furthermore, the Act does not seem to have been drafted with the University in mind. As the University points out, the terms "school," "teacher," and "superintendent of schools," found in section 197.-46, while appropriate to the primary and secondary school systems, do not fit the University or its job classifications. We find this significant because the Public Employers Labor Relation Act, which specifically establishes bargaining units for University of Minnesota employees, does not use the term "teacher" but "professor", "associate professor", and "assistant professor" when referring to academic employees. Minn.Stat. § 179A.11, subd. 1(8). (1992)

Nor does the case law suggest that the University should be considered a political subdivision of the state to which the Act applies. The only case defining "political subdivision" for purposes of the Veterans Preference Act is *Dahle v. Red Lake Watershed Dist.*, 354 N.W.2d 604, 606 (Minn. Ct.App.1984), in which the court of appeals determined that watershed districts are political subdivisions within the meaning of section 197.46 because they are "empowered to cause taxes to be levied." Because the University has no direct or indirect power to cause taxes to be levied, it is not a political subdivision under this definition.

Finally, the term "political subdivision" is commonly understood to mean an entity with a prescribed area and authority for subordinate local government. "Political subdivision," as used in the Veterans Preference Act and other Minnesota statutes, consistently refers to such traditional units of the state as counties and cities. Al-

though Chapter 355, governing social security coverage, defines "political subdivision" to include "any instrumentality of the state," Minn.Stat. § 355.01, subd. 10 (1992), this definition applies only for the purposes of that chapter. Minn.Stat. § 355.01, subd. 1 (1992).

Respondents Winberg and Martin and the Commissioner of Veterans Affairs contend that the legislature implicitly intended to include the University in the Veterans Preference Act as a "political subdivision" of the state, even though it was not expressly named. They cite *Henry v. Metropolitan Waste Control Comm'n*, 401 N.W.2d 401 (Minn.App.1987), *Caffrey v. Metropolitan Airports Comm'n*, 310 Minn. 480, 246 N.W.2d 637 (1976), *Dahle v. Red Lake Watershed Dist.*, 354 N.W.2d 604 (Minn.App.1984), and *AFSCME Council 96 v. Arrowhead Regional Corrections Bd.*, 356 N.W.2d 295 (Minn.1984), as cases in which the Veterans Preference Act was applied to independent units of government not named by the Act. These cases are distinguishable, however, because the watershed district, the waste control commission and the airport commission all have the power to tax or to cause taxes to be levied. In *AFSCME*, the applicability of the Act was not in issue.

Respondents also point to the Open Meeting Law and the Minnesota Human Rights Act as laws of general applicability based on broad public policy which apply to the University. The cases cited by respondents, *Minnesota Daily v. University of Minnesota*, 432 N.W.2d 189 (Minn.App. 1988) and *City of Minneapolis Comm'n on Civil Rights v. University of Minnesota*, 356 N.W.2d 841 (Minn.App.1984), do proceed on the premise that these laws apply to the University. However, the language of the Open Meeting Law, making it applicable to "any state agency, board, commission or department, ... governing body of any school district, ... county, city, town, or *other public body*," Minn.Stat. § 471.-705, subd. 1 (1992), is broader than the words "political subdivision" used in the Veterans Preference Act, and the Human

adopt, and enforce rules, regulations, and ordinances regarding traffic and parking).

Rights Act applies to any employer. Minn. Stat. ch. 363.03 (1992).

The legislature has had countless opportunities in the last eighty-six years to specifically include the University within the purview of the Veterans Preference Act. It has not done so, nor will we. We hold that the University of Minnesota is not a "political subdivision" of the state to which the Veterans Preference Act, including Minn.Stat. §§ 197.455 and 197.46, applies.

Because we hold the Veterans Preference Act does not apply, we need not consider again the extent to which the legislature can constitutionally control the University.[3] The Commissioner of Veterans Affairs erred in ordering the University of Minnesota to revise its hiring practices to comply with the Act. The district court improperly granted injunctive relief in Martin's case. We reverse the decision of the court of appeals.

Reversed.

PAGE, J., took no part in the consideration or decision of this case.

**3.** That the internal management of the University has been constitutionally placed in the hands of the regents alone, as set out in *Chase*, was reaffirmed in *Regents of Univ. of Minn. v. Lord*, 257 N.W.2d 796, 802 (Minn.1977). In *Lord*, the regents challenged whether the legislature could condition a grant of state funds to the University for constructing a new building upon the University's acceptance of the state-selected architect. This court set out a two-part test to determine whether the legislature could constitutionally attach conditions to legislative appropriations to the University: (1) Is there an ap-. propriation, and, if so, may the University accept or reject it; and (2) Is the legislature's attachment of conditions to the appropriation an attempt by the legislature to control the exercise of the regents' constitutional powers over the internal management of the University? Here, there is no direct state appropriation to the University upon which to condition compliance with the Veterans Preference Act. The court of appeals circumvents this fact by saying the expenditure of public funds indirectly is for public employment.