STAR TRIBUNE COMPANY,
Respondent,

The Minnesota Daily, et
al., Respondents,

Northwest Publications,
Inc., Respondent,

v.

UNIVERSITY OF MINNESOTA
BOARD OF REGENTS, et
al., Appellants;

Star Tribune Company, Respondent,

The Minnesota Daily, et
al., Respondents,

Northwest Publications,
Inc., Respondent,

v.

University of Minnesota Board of
Regents, et al., Petitioners.

Nos. A03–124, A03–155.

Court of Appeals of Minnesota.

Aug. 19, 2003.

Mark B. Rotenberg, General Counsel, Lorie S. Gildea, Associate General Counsel, University of Minnesota, Minneapolis, MN, for appellants.

John E. Simonett, Clifford M. Greene, John M. Baker, Greene Espel, P.L.L.P., Minneapolis, MN, of counsel for appellants.

John P. Borger, Eric E. Jorstad, Patricia R. Stembridge, Faegre & Benson LLP, Minneapolis, MN, for respondent Star Tribune.

Mark R. Anfinson, Minneapolis, MN, for respondents Minnesota Daily, et al.

Paul R. Hannah, St. Paul, MN, for respondent Northwest Publications, Inc.

Kent G. Harbison, Daniel J. Brennan, Fredrikson & Byron, P.A., Minneapolis, MN, for amici curiae John Does.

Considered and decided by HARTEN, Presiding Judge, ANDERSON, Judge, and WRIGHT, Judge.

## OPINION

HARTEN, Judge.

Appellant University of Minnesota Board of Regents (the board) conducted closed meetings with selected candidates for the university presidency and refused the requests of respondents, print media news organizations, for data on the unsuccessful candidates. Respondents then brought this action, alleging violations of the Minnesota Open Meeting Law, Minn. Stat. §§ 13D.01–.07 (2002) (OML), and the Minnesota Government Data Practices Act, Minn.Stat. §§ 13.01–.90 (2002) (DPA); respondents also sought an order compelling disclosure of the data on the unsuccessful candidates and enjoining the board from conducting closed meetings. The board moved to dismiss; respondents moved for partial summary judgment on the board's alleged violation of the DPA. Following a hearing, the district court concluded that both the OML and the DPA applied to the board's search for a university president, denied the board's motion, granted respondents' motion, and ordered the board to disclose data on the unsuccessful candidates.

■ The board sought review in this court and moved to stay the order requiring it to disclose pending resolution of its appeal.[1] This court granted the motion to stay. The undisclosed unsuccessful candidates sought either to intervene or to file an amici curiae brief; they were granted leave to file an amici curiae brief.[2]

## FACTS

When the president of the University of Minnesota announced his resignation, the board began a search for his replacement. Some individuals declined to apply for the position unless they were guaranteed that their candidacy would be kept confidential.

The board voted to suspend its adherence to the OML and to conduct closed meetings with the candidates. Respondents requested information on the candidates; the board denied their requests, claiming that information on candidates was not subject to the DPA. After conducting closed interviews of the candidates, the board selected one finalist, who was duly installed as president.

## ISSUES

1. Does the DPA apply to information about the board's search for a university president?

2. Does the OML apply to the board's search for a university president?

3. Does the Minnesota Constitution preclude the application of the OML or the DPA to the board's search for a university president?

## ANALYSIS

■ The application of law to stipulated facts is a question of law, which this court reviews de novo. *Morton Bldgs., Inc. v. Comm'r of Revenue*, 488 N.W.2d 254, 257 (Minn.1992).

### 1. Application of the DPA

[T]he following personnel data on current and former applicants for employment by a *state agency*, statewide system or political subdivision or appointment to an advisory board or commission is public: veteran status; relevant test scores; rank on eligible list; job history; education and training; and work availability. Names of applicants shall be private data except when certified as eligible for appointment to a vacancy or when applicants are considered by the appointing authority to be finalists for a position in public employment. For purposes of this subdivision, "finalist" means an individual who is selected to be interviewed by the appointing authority prior to selection.

Minn.Stat. § 13.43, subd. 3 (2002) (emphasis added).

"State agency" means the state, the *University of Minnesota*, and any office, officer, department, division, bureau,

---

1. The board filed a notice of appeal and petitioned for discretionary review. Because this court granted the petition for discretionary review, it did not reach the issue of the appealability of the district court's order. *See Star Tribune Co. v. Univ. of Minn. Bd. of Regents*, —— N.W.2d ——, No. A03–124 (Minn.App.19 August 2003) (order).

2. Respondents moved to strike two affidavits included in the board's appendix and the portions of the board's brief and the amici curiae brief that rely on those affidavits, contending that the affidavits are not part of the record because they were not before the district court. *See* Minn. R. Civ.App. P. 110.01 (record on appeal is papers filed in the trial court, the exhibits, and the transcript of the proceedings, if any). Because the affidavits were not before the district court when it issued the order that is the subject of this appeal, we grant respondents' motion to strike.

board, commission, authority, district or agency of the state.

Minn.Stat. § 13.02, subd. 17 (2002) (emphasis added). The board relies on *Winberg v. Univ. of Minn.*, 499 N.W.2d 799 (Minn.1993), to argue that the DPA does not apply because it does not specifically say that it applies to a search for the university president. The board's reliance is misplaced; *Winberg* is distinguishable. *Winberg* addressed whether the university was subject to the Veterans Preference Act, specifically to Minn.Stat. § 197.455 (1990), granting preference to veterans under "ordinances, rules or regulations of a county, city, town, school district, or other municipality or *political subdivision of this state*," and to Minn.Stat. § 197.46 (1990), granting veterans a hearing prior to removal from positions "in the several counties, cities, towns, school districts and *all other political subdivisions in the state.*" *Id.* at 801.

> Nowhere in the Veterans Preference Act has the legislature specifically named the University as an entity to which the Act applies. * * *
>
> \* \* \* \* \* \*
>
> * * * [I]f the legislature had intended the Veterans Preference Act to apply to the University of Minnesota, it most likely would have included the University by specific reference. * * *
>
> Furthermore, the Act does not seem to have been drafted with the University in mind. * * *
>
> Nor does the case law suggest that the University should be considered a political subdivision of the state to which the Act applies. * * *
>
> Finally, the term "political subdivision" is commonly understood to mean an entity with a prescribed area and

authority for subordinate local government.

\* \* \* \* \* \*

> The legislature has had countless opportunities in the last eighty-six years to specifically include the University within the purview of the Veterans Preference Act. It has not done so, nor will we. We hold that the University of Minnesota is not a "political subdivision" of the state to which the Veterans Preference Act, including Minn.Stat. §§ 197.455 and 197.46, applies.

*Id.* at 801–03. In contrast to the Veterans Preference Act, the DPA does include the university: " 'State agency' means * * * the University of Minnesota." Minn.Stat. § 13.02, subd. 17. Accordingly, the *Winberg* holding is distinguishable.

■ The board contends that, even if the DPA applies to the university generally, it does not apply to the board's search for a university president because it does not mention that activity. But the statute has no language that would support this contention, and this court may not add to the statute what the legislature deliberately or inadvertently omitted. *Ullom v. Indep. Sch. Dist. No. 112*, 515 N.W.2d 615, 617 (Minn.App.1994).

We conclude that the DPA applies to the university's procedure for selecting its president.

## 2. Application of the OML

All meetings, including executive sessions, must be open to the public (a) of a state (1) agency * * * when required or permitted by law to transact public business in a meeting; * * * (c) of any * * * (3) board * * * of a public body * * *.

Minn.Stat. § 13D.01, subd. 1 (2002). To argue that the university is not a "public body," the board seeks to extend the *Win-*

*berg* holding that the university is not a "political subdivision." *Winberg*, 499 N.W.2d at 803. But *Winberg* itself precludes such an extension.

> [T]he language of the Open Meeting Law, making it applicable to "any state agency, board, commission or department, * * * governing body of any school district, * * * county, city, town, or *other public body*," Minn.Stat. § 471.705, subd. 1 (1992), is broader than the words "political subdivision" used in the Veterans Preference Act * * *.

*Id.* at 802; *see also Kalia v. St. Cloud State Univ.*, 539 N.W.2d 828, 830 (Minn. App.1995) (university "claimed that, as a public body, it is entitled to protection by vicarious official immunity for the acts of [its] president").

■■■ Moreover, the OML includes its own list of exceptions:

> This chapter does not apply
>
> (1) to meetings of the commissioner of corrections;
>
> (2) to a state agency, board, or commission when it is exercising quasi-judicial functions involving disciplinary proceedings; or
>
> (3) as otherwise expressly provided by statute.

Minn.Stat. § 13D.01, subd. 2 (2002). The board in effect asks this court to add a fourth exception: searches for a university president. Again, this court cannot add to statutory exceptions that the legislature

provided. *Ullom*, 515 N.W.2d at 617. There being no statutory provision to the contrary, we conclude that the OML applies to the university's procedure for selecting its president.

### 3. Constitutional Implications

■■■ The board also argues that applying the DPA and the OML to its procedure for selecting a university president violates its constitutional mandate to control and manage the university. For this argument, the board relies on *Regents of Univ. of Minn. v. Lord*, 257 N.W.2d 796 (Minn. 1977). Again, its reliance is misplaced. *Lord* concerned the application of the state designer selection board act to the university; it held that the application was not unconstitutional because the conditions imposed by the act did not "[intrude] into the internal control and management of the university by its Board of Regents." *Id.* at 802. The act, however, required designers for major university building projects to be chosen by the state designer selection board instead of by the regents, who had previously chosen designers. *Id.* at 797–98. *Lord* therefore approved a substantive legislative restriction on the regents' operation. The restrictions imposed by the DPA and the OML, in contrast, are merely procedural: the board may choose the president at its sole discretion, but it must do so in accord with the DPA and the OML. We conclude that the constitution does not preclude imposing the OML and the DPA on the university's procedure for selecting its president.[3]

---

**3.** We note that many other states have addressed this issue and that their decisions are not consistent. *See, e.g., Federated Publ'ns, Inc. v. Bd. of Trustees of Mich. State Univ.*, 460 Mich. 75, 594 N.W.2d 491 (1999) (holding that Michigan's OML did not apply to regents' search for president); *Bd. of Trustees of State Insts. of Higher Learning v. Miss. Publishers Corp.*, 478 So.2d 269 (Miss.1985) (holding that Mississippi's equivalent of the

OML did apply to regents). However, the trend appears to be towards open presidential searches. *See* Charles N. Davis, *Scaling the Ivory Tower: State Public Records Laws and University Presidential Searches*, 21 Journal of College and University Law 353, 354, 367 (1994) ("most state public-records laws require open presidential-search records" and "cases * * * demonstrate that the public's right to access to the search process out-

## DECISION

Both the DPA and the OML apply to the board's procedure for selecting a university president, and that application does not violate the board's constitutional mandate. We affirm the partial summary judgment and order that upon the expiration of 30 days following the filing of this opinion, this court's stay of the district court's disclosure order will automatically terminate.

**Affirmed; motion granted.**

weighs the privacy interests of either the applicants or the university").