**MINNESOTA INSURANCE GUARANTY ASSOCIATION, Respondent,**

**v.**

**INTEGRA TELECOM, INC., Appellant.**

No. A04–1877.

Court of Appeals of Minnesota.

June 7, 2005.

Stephen P. Lucke, Michelle S. Grant, Dorsey & Whitney, L.L.P., Minneapolis, MN, for respondent.

Dean A. LeDoux, Gray, Plant, Mooty, Mooty & Bennett, P.A., Minneapolis, MN, for appellant.

Considered and decided by KALITOWSKI, Presiding Judge; LANSING, Judge; and MINGE, Judge.

## OPINION

KALITOWSKI, Judge.

Appellant Integra Telecom, Inc. challenges the district court's grant of summary judgment in favor of respondent Minnesota Insurance Guaranty Association (MIGA). Appellant argues that (1) the district court erroneously construed the Minnesota Insurance Guaranty Association Act to permit MIGA to maintain a reimbursement claim against appellant based on a settlement MIGA entered into without appellant's consent; (2) the district court erred because Minn.Stat. § 60C.11, subd. 3, prohibits MIGA from bringing a cause of action against appellant; and (3) the court's construction rendered the act unconstitutional by violating appellant's due process rights.

## FACTS

In 2000, Laura Breid filed a workers' compensation claim for injuries sustained in the course of her employment with appellant Integra Telecom, Inc. Appellant submitted the claim to its insurer, Reliance Insurance Company (Reliance). Prior to any settlement being reached, Reliance went into receivership and in October 2001, Reliance was declared insolvent by Pennsylvania court order.

Pursuant to Minnesota law, the responsibility for handling the Breid claim fell to respondent Minnesota Insurance Guaranty Association (MIGA). *See* Minn.Stat. § 60C.01–.22 (2002) (the Minnesota Insurance Guaranty Act).[1] MIGA is an association created by statute. Minn.Stat. § 60C.04. When an insurer is deemed insolvent, MIGA "shall [b]e deemed the insurer to the extent of its obligation on the covered claims and have the right to pursue and retain salvage and subrogation recoverables on covered claim obligations." Minn.Stat. § 60C.05, subd. 1(a). Accordingly, MIGA assumed Reliance's obligations.

In August 2002, MIGA authorized a settlement of the Breid claim and the Stipulation for Settlement was submitted to the office of administrative hearings, which issued an Award on Stipulation in September 2002. Subsequently MIGA sought reimbursement from appellant for the $62,801 paid on the Breid claim in addition to amounts that will come due in the future under the stipulation. MIGA cited its right to "recover the amount of any covered claim ... resulting from insolvencies which occur after July 31, 1996, on behalf of an insured who has a net worth of $25,000,000 ... and whose liability obligations to other persons are satisfied in whole or in part by payments made under this chapter." Minn.Stat. § 60C.11, subd. 7.

After appellant refused to pay, MIGA filed a complaint seeking reimbursement. Following discovery, the parties brought cross-motions for summary judgment. Appellant argued that MIGA did not have the authority to legally bind appellant to a settlement without first obtaining appellant's consent. Appellant argued in the alternative that to the extent the Minnesota Insurance Guaranty Association Act (the Act) gives MIGA the authority to settle claims for which an insured will be liable without the insured's consent, the statute is unconstitutional because it constitutes a taking without due process.

MIGA maintained that it did not need appellant's consent, or alternatively, that it

---

1. The parties agree that Breid's claim is a covered claim under the act and is not affected by the 2003 changes to the act. Minn.Stat. § 60C.09, subd. 2(3) (2002). *See* 2003 Minn. Laws ch. 74, § 6 (amending act to exclude from the definition of "covered claims" any claims, not just first-party claims, by an insured whose net income exceeds $25 million).

had appellant's consent to settle the suit under the terms of appellant's insurance policy with Reliance that was transferred to MIGA under the Act when Reliance became insolvent. MIGA also argued that even if it did not receive consent, because the settlement was reasonable and made in good faith, appellant cannot show that it was prejudiced by the settlement.

The district court granted summary judgment in favor of MIGA concluding that (1) MIGA is not required to obtain consent from the insured before MIGA pays a claim under the insured's policy in order to maintain a reimbursement claim against the insured; and (2) the Act was constitutional.

## ISSUES

1. Did the district court erroneously construe the Minnesota Guaranty Association Act to permit MIGA to maintain a reimbursement claim against appellant based on a settlement MIGA entered into without appellant's consent?

2. Did the district court err by failing to properly reconcile conflicting provisions of the Minnesota Guaranty Association Act?

3. Did the district court's interpretation of the Minnesota Guaranty Association Act render the Act unconstitutional?

## ANALYSIS

"On an appeal from summary judgment, we ask two questions: (1) whether there are any genuine issues of material fact and (2) whether the lower courts erred in their application of the law." *State by Cooper v. French*, 460 N.W.2d 2, 4 (Minn.1990). "On appeal, the reviewing court must view the evidence in the light most favorable to the party against whom judgment was granted." *Fabio v. Bellomo*, 504 N.W.2d 758, 761 (Minn.1993).

## I.

Appellant argues that the district court erred in its interpretation of the Act by construing the statute to impermissibly expand the scope of authority conveyed to MIGA in order to permit MIGA—when the underlying insurer becomes insolvent—to settle claims in its discretion without consent from the insured, and to then require the insured to reimburse MIGA for the full amount of the settlement. Appellant contends that if the legislature intended such a harsh result, the legislature would have clearly expressed that intent. Appellant maintains that MIGA only has the authority expressly contained within its enabling act and that the district court's construction of the Act overlooked this threshold principle. *See Peoples Natural Gas Co. v. Minn. Pub. Utils. Comm'n*, 369 N.W.2d 530, 534 (Minn.1985) (stating that the public utilities commission, as a creature of statute, "has only those powers given to it by the legislature") (quotation omitted).

Statutory construction is a question of law that this court reviews de novo. *See Brookfield Trade Ctr., Inc. v. County of Ramsey*, 584 N.W.2d 390, 393 (Minn.1998). "When interpreting a statute, we first look to see whether the statute's language, on its face, is clear or ambiguous. A statute is only ambiguous when the language therein is subject to more than one reasonable interpretation." *Am. Family Ins. Group v. Schroedl*, 616 N.W.2d 273, 277 (Minn.2000) (citation and quotation marks omitted). Where a statute is ambiguous,

[b]asic canons of statutory construction instruct that we are to construe words and phrases according to their plain and ordinary meaning. A statute should be interpreted, whenever possible, to give effect to all of its provisions; no word, phrase, or sentence should be deemed

superfluous, void, or insignificant. We are to read and construe a statute as a whole and must interpret each section in light of the surrounding sections to avoid conflicting interpretations. Finally, courts should construe a statute to avoid absurd results and unjust consequences.

*Id.* at 277–78 (citations and quotation marks omitted).

In addressing appellant's argument, it is helpful to begin with the purposes of the Act as stated by the legislature:

> [t]he purposes of this chapter are to provide a mechanism for the payment of covered claims under certain insurance policies and surety bonds, to the extent provided in this chapter, minimize excessive delay in payment and to avoid financial loss to claimants or policyholders because of the liquidation of an insurer, and to provide an association to assess the cost of the protection among insurers.

Minn.Stat. § 60C.02, subd. 2 (2002). Such protection is not absolute; the Act places financial limits on covered claims and excludes some claims. *See* Minn.Stat. § 60C.09, subds. 2, 3 (2002). The Act "shall be liberally construed to effect the purposes stated in subdivision 2." Minn. Stat. § 60C.02, subd. 3 (2002).

Section 60C.05 delineates the powers and duties of MIGA. Following the insolvency of an insurer, MIGA "shall ... [b]e deemed the insurer to the extent of its obligation on the covered claims and have the right to pursue and retain salvage and subrogation recoverables on covered claim obligations...." Minn.Stat. § 60C.05, subd. 1(a) (2002). The statute also authorizes MIGA to "[n]egotiate and become a party to the contracts necessary to carry out the purpose of this chapter," and to "[p]erform other acts necessary or proper

to effectuate the purpose of this chapter." Minn.Stat. § 60C.05, subd. 2(d), (e) (2002).

Appellant argues that because section 60C.05, delineating the MIGA's powers and duties, does not expressly vest MIGA with the authority to settle claims without the consent of an insured against whom MIGA will be seeking reimbursement, MIGA has no such authority. But statutory authority may be either express or implied. *In re Application of Minnegasco,* 565 N.W.2d 706, 711 (Minn.1997). An implied authority may be inferred when the necessity and logic of the situation require it. *Id.*

■ There is no dispute that under the Act as it existed in 2001–2002, the Breid claim was a covered claim, and that MIGA was obligated to take over and pay the claim when Reliance became insolvent. The language of the Act vests MIGA with authority to negotiate claims as a party to the underlying policy contract, and it obligates MIGA to take additional steps to carry out the purposes of the statute, which includes minimizing delays in payment to claimants. Minn.Stat. §§ 60C.02, subd. 2, .05. Notably, the statute is silent as to whether MIGA must obtain consent from the insured before negotiating a settlement. But this does not mean that consent is required. Rather, the canons of statutory construction prohibit this court from adding words to a statute to supply that which the legislature purposefully omits or inadvertently overlooks. *Goplen v. Olmsted County Support & Recovery Unit,* 610 N.W.2d 686, 689 (Minn.App. 2000).

■ We therefore conclude that in light of (1) the broad description of MIGA's powers in section 60C.05, subdivision 2(d) and (e); (2) the absence of any consent requirement; and (3) the remedial purpose of the statute; an implied authority to settle covered claims without consent from

the insured is inferred from the statutory scheme. *See Miklas v. Parrott,* 684 N.W.2d 458, 461 (Minn.2004) (stating "[r]emedial statutes must be liberally construed for the purpose of accomplishing their objects") (quotation omitted). Without such authority, claimants would have to wait for MIGA and the insured to work out an agreement as to any settlement, thereby prolonging the delay in payment and contravening the clear purpose of the statute.

■ Because we conclude that MIGA has authority to settle claims without appellant's consent, we do not address MIGA's alternative argument that it had consent to settle under the terms of appellant's insurance policy with Reliance.

## II.

■ Appellant contends the district court failed to apply Minn.Stat. § 60C.11, subd. 3 (2002), which provides: "The association [MIGA] *has no cause of action against the insured* of the insurer for any sums it has paid out except the causes of action the insurer would have had if the sums had been paid by the insurer." (Emphasis added.) The district court instead based its decision on Minn.Stat. § 60C.11, subd. 7 (2002), which provides: "The association [MIGA] *may recover the amount of any covered claim paid,* resulting from insolvencies which occur after July 31, 1996, on behalf of an insured who has a net worth of $25,000,000 ... and whose liability obligations to other persons are satisfied in whole or in part by payments made under this chapter." (Emphasis added.) Because it could reasonably be interpreted that the two subdivisions are in conflict, we conclude that the statute is ambiguous. *See* Minn.Stat. § 645.26 (2002) (providing rules of construction for irreconcilable provisions); *Am. Family Ins. Group,* 616 N.W.2d at 277. The object of all statutory interpretation is to ascertain the intention of the legislature. Minn.Stat. § 645.16 (2002). And contemporaneous legislative history may be helpful in ascertaining the legislature's intent. *Id.*

When interpreting clauses in the same law that are irreconcilable, the "clause last in order of date or position shall prevail." Minn.Stat. § 645.26, subd. 2. Because subdivision 7 of section 60C.11 was added in 1996 and subdivision 3 has been in the Act since its inception in 1971, under the canons of statutory construction, subdivision 7 prevails. 1996 Minn. Laws ch. 446, art. 2, § 8 (adding subdivision 7 to the Act). While the purpose of the Act is to protect insureds like appellant, the subsequent enactment of subdivision 7 recognizes that certain insureds have the ability to pay judgments and that MIGA's limited funds should go to those least able to absorb the impact. Courts construing similar provisions in other states with comparable statutes have reached similar conclusions. *See Borman's Inc. v. Mich. Prop. & Cas. Guar. Ass'n,* 925 F.2d 160, 162 (6th Cir. 1991) (stating parties agreed that purpose of net worth calculation was to ensure association's funds go to those insureds least able to absorb unexpected loss due to insolvency of insurer); *R.I. Insurers' Insolvency Fund v. Leviton Mfg. Co.,* 716 A.2d 730, 734–35 (R.I.1998) (stating decision to include recoupment provision applicable to companies with net worths in excess of $50 million ensures sufficient funds will be available to accomplish important objective that benefits of fund first be paid to injured employees).

Appellant asserts that subdivisions 3 and 7 can be reconciled by interpreting subdivision 7 to mean that MIGA has the authority to enter into enforceable contracts with high net worth insureds in cases where MIGA agrees to handle the insured's claims in a manner and upon terms that MIGA and the insured agree to be-

fore the claim is settled, including a right of reimbursement by MIGA. Such an interpretation would not violate subdivision 3, according to appellant, because MIGA would still be prohibited from instituting a cause of action against an insured. But, as with section 60C.05, there is no language in subdivision 7 of section 60C.11 requiring MIGA to obtain agreement from the insured in order to settle a claim or recover the amount in claims paid out on the insured's behalf.

Moreover, legislative history makes clear that subdivision 7 was intended to allow MIGA the right to recover amounts paid on behalf of a company with a net worth greater than $25 million, who are presumably sophisticated insurance purchasers, in order to ensure that the MIGA's limited funds would go to pay the claims of those insureds without substantial assets. Hearing on S.F. No. 1980 Before the Senate Commerce & Consumer Protection Comm. (Feb. 7, 1996) (statement of Department of Commerce spokesperson P. Peterson); Hearing on H.F. 2378 Before House Fin. Institutions & Ins. Comm. (Feb. 14, 1996) (statement of Department of Commerce spokesperson Charles Nettell). Earlier agreement by the insured to a negotiated settlement with the claimant prior to recovering from the insured was never contemplated by the legislature, and the statutory language plainly does not require consent. Accordingly, and as stated above, because "the statute has no language that would support [appellant's] contention, ... this court may not add to the statute what the legislature deliberately or inadvertently omitted." *Star Tribune Co. v. Univ. of Minn. Bd. of Regents,* 667 N.W.2d 447, 450 (Minn.App.2003), *aff'd,* 683 N.W.2d 274 (Minn.2004).

Appellant also argues that use of the phrase "cause of action" in subdivision 3 demonstrates that the legislature knew how to allow or prohibit a cause of action by MIGA and that use of the less specific phrase "may recover" in subdivision 7 indicates that the legislature did not intend subdivision 7 to create a cause of action for MIGA against certain insureds. We disagree. To adopt appellant's interpretation would read out of the statute the very explicit language permitting MIGA to recover amounts paid on behalf of high net worth insureds.

Appellant further argues that to permit an action against high net worth insureds essentially renders subdivision 3 superfluous. We disagree. MIGA is still prohibited from initiating any cause of action against an insured whose net worth is under $25 million. Minn.Stat. § 60C.11, subd. 3. We also reject appellant's argument that because subdivision 7 does not explicitly state that it is an exception to subdivision 3, it should not be interpreted as an exception. Even if subdivision 7 is not an exception, it is a more specific provision than subdivision 3 and, therefore, it prevails. *See* Minn.Stat. § 645.26, subd. 1 (providing interpretation of statutes should attempt to give effect to all provisions but in event of irreconcilable provisions, specific controls over general).

Appellant also points out that subdivision 7 does not clearly state from whom or how MIGA may recover such amounts. However, to construe the statute to mean anything other than permitting MIGA to maintain a reimbursement claim against a high net worth insured would be absurd. It is on behalf of the high net worth insured that the claim was paid. "When the words of a law are not explicit, the intention of the legislature may be ascertained by considering ... the object to be attained ... [and] the consequences of a particular interpretation." Minn.Stat. § 645.16. It is presumed that the legisla-

ture (1) does not intend an absurd result; and (2) intends to favor the public interest over a private interest. Minn.Stat. § 645.17 (2002). Further, as noted above, legislative history does not support appellant's position.

Appellant next argues that to construe subdivision 7 to permit MIGA to maintain a reimbursement claim against high net worth insureds makes no sense if the underlying Breid claim is a "covered claim" under section 60C.09 (as it existed at the time of the settlement),[2] because such a construction essentially turns the covered claim into an excluded claim. *See* Minn.Stat. § 60C.09, subd. 1 (2002) (defining "covered claim"). That is to say, since the recoupment provision places appellant in the same position it would be if the Breid claim had been an excluded claim under the Act, then the legislature could have excluded claims from MIGA's coverage by changing the definition of what constitutes a "covered claim," which, appellant points out, the legislature did in 2003. First, we note that subsequent amendments are not relevant. Moreover, appellant's argument fails to recognize that even if appellant is ultimately responsible for any payment to Breid, the legislature still had a rational basis for transferring the case to MIGA for handling to ensure prompt payment to the injured employee—one of the primary purposes of the Act. Thus, providing a recoupment provision to recover claims paid to injured employees helps to accomplish the purpose of the Act.

Finally, appellant argues that to construe subdivision 7 to not require consent

creates an absurd result because one of the purposes of the Act is to "avoid financial loss to ... policyholders because of the liquidation of an insurer." Minn.Stat. § 60C.02, subd. 2. Appellant asserts that construing a recoupment provision absent consent into subdivision 7 leaves insureds in a worse position than they would have been had they never bought insurance in the first instance because they receive no benefit from the premiums that were paid. Appellant also asserts that depriving insureds of the opportunity to assess the reasonableness of a settlement that they will ultimately pay further disadvantages insureds. But the purpose of the Act is also to avoid financial loss to claimants, and funds to cover the cost of the financial protection are not unlimited. By enacting subdivision 7, the legislature sought to balance the interests of claimants and policyholders by allowing MIGA to handle claims quickly and efficiently and by providing MIGA with an option to seek reimbursement from high net worth insureds, and thereby permit MIGA's limited funds to go to those most in need should their insurer become insolvent.

### III.

Appellant argues that the district court's interpretation of the Act violates its state and federal constitutional rights to due process because allowing MIGA to seek reimbursement without appellant's consent constitutes a taking of property without due process.

But the party challenging the constitutionality of a statute on appeal must

---

**2.** Section 60C.09 excluded any first-party claims resulting from insolvencies occurring after July 31, 1996, by high net worth insureds. Minn.Stat. § 60C.09, subd. 2(3). First-party claims are claims where the insured itself has a loss that is covered by a policy. In contrast, third-party claims are those where the insured is covered for liability to third persons. *See RLI Ins. Co. v. Pike*, 556 N.W.2d 1, 3 (Minn.App.1996), *review denied* (Minn. Jan. 29, 1997). The underlying Breid claim was a third-party claim; therefore it was not excluded.

notify the attorney general in time to afford an opportunity to intervene. Minn. R. Civ.App. P. 144. Appellant did not do so, claiming that MIGA, as a legislatively-created body, should be considered a state party, thereby obviating the need to notify the attorney general. But MIGA is not a state agency; it is an unincorporated organization formed of insurers who transact insurance business in Minnesota. Minn. Stat. § 60C.04 (2002). "[B]ecause [appellant] failed to inform the attorney general of [its] constitutional claim, as required by Minn. R. Civ.App. P. 144, this issue is not properly before this court." *Theorin v. Ditec Corp.*, 377 N.W.2d 437, 440 n. 1 (Minn.1985); *see also Maxwell Communications v. Webb Publ'g Co.*, 518 N.W.2d 830, 834 n. 6 (Minn.1994) (finding violation of rules where no notice was given to attorney general in case where MIGA was a respondent).

## DECISION

Because the Minnesota Guaranty Association Act permits the Minnesota Insurance Guaranty Association to negotiate a settlement and recover the amount of any covered claim paid from an insured with a net worth exceeding $25 million, we affirm the district court's grant of summary judgment in favor of Minnesota Insurance Guaranty Association.

Because MIGA is not a state agency and appellant failed to notify the attorney general of its constitutional challenge to the Minnesota Guaranty Association Act, we do not address this argument.

**Affirmed.**